FILED

03/25/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0351

DA 24-0351

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 54

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

KYLER AUSTIN CLINKENBEARD,

     Defendant and Appellant.

APPEAL FROM:   District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC-23-88
Honorable Jennifer B. Lint, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Lance P. Jasper, Jenna P. Lyons, Reep, Bell & Jasper, P.C., Missoula, Montana

     For Appellee:

     Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant Attorney General, Helena, Montana

     Bill Fulbright, Ravalli County Attorney, Sean Peterson, Deputy County Attorney, Hamilton, Montana

Submitted on Briefs:  January 22, 2025

Decided:  March 25, 2025

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Kyler Austin Clinkenbeard (Clinkenbeard) appeals the District Court's denial of his Motion to Suppress and Dismiss and subsequent conviction for driving under the influence (DUI). Clinkenbeard argues that because he had never refused a blood test and is a first-time DUI offender, the implied consent statute prohibited police from obtaining a blood sample. We affirm.

¶2 Clinkenbeard presents the following issue for review:

*Whether § 61-8-1016(4)(a), MCA, of the implied consent statute, precludes law enforcement from obtaining a search warrant for a DUI investigation pursuant to § 46-5-221, MCA, when a first-time DUI suspect refuses to submit to testing under the implied consent statute.*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 On September 10, 2022, a Montana Highway Patrol Trooper observed Clinkenbeard driving 89 mph in a 65-mph zone and initiated a traffic stop. The Trooper could smell alcohol on Clinkenbeard's breath, and Clinkenbeard admitted that he had just consumed three beers at a bar. He also had a case of beer behind the driver's seat. Clinkenbeard performed poorly on field sobriety tests and his preliminary breath test revealed a .130 blood alcohol concentration. He was taken into custody but refused a blood test. The Trooper then obtained a search warrant for a blood sample which showed a .101 blood alcohol concentration. Clinkenbeard was charged with driving under the influence of alcohol and/or drugs (first offense) and speeding.

¶4 Clinkenbeard filed a motion to suppress the results of the blood test and dismiss the charges in Ravalli County Justice Court on January 5, 2023, asserting a *Brady* violation,

2

outrageous government conduct, that the location of the blood draw was illegal, and that the State was precluded from seeking a blood test warrant for first-time DUI suspects. The Justice Court denied the motion on February 8, 2023. Clinkenbeard pleaded guilty to both charges pursuant to a plea agreement that reserved his right to appeal the denial of his suppression motion to the District Court. After an evidentiary hearing, the District Court likewise denied the motion. Clinkenbeard appeals the District Court's denial of his suppression motion.

## STANDARD OF REVIEW

¶5 We review a district court's decision on a motion to dismiss a criminal case de novo, for correctness. *State v. Madsen*, 2013 MT 281, ¶ 6, 372 Mont. 102, 317 P.3d 806 (citations omitted). We review a district court's decision on a motion to suppress to determine whether the factual determinations are clearly erroneous and whether the conclusions of law are correct. *State v. Hixon*, 2008 MT 365, ¶ 18, 346 Mont. 427, 197 P.3d 918. We review a district court's statutory interpretation and construction de novo for correctness. *Madsen*, ¶ 6 (citing *State v. Brown*, 2009 MT 452, ¶ 6, 354 Mont. 329, 223 P.3d 874).

## DISCUSSION

¶6 On appeal, Clinkenbeard maintains only that the blood sample was illegally obtained because § 61-8-1016(4)(a), MCA, of the implied consent statute, precludes giving a refused test unless the arrested person has refused to provide a requested test in a prior investigation or has a prior conviction or pending offense for DUI. He reasons that unless one of the subsection's enumerated conditions is met, law enforcement may not otherwise

3

obtain a warrant as part of its DUI investigation. The relevant subsection's text states in full:

> If an arrested person refuses to submit to one or more tests requested and designated by the peace officer, the refused test or tests *may not be given* unless the person has refused to provide a breath, blood, urine, or other bodily substance in a prior investigation in this state or under a substantially similar statute in another jurisdiction or the arrested person has a prior conviction or pending offense for a violation of 45-5-104, 45-5-106, 45-5-205, or driving under the influence, including 61-8-1002, an offense that meets the definition of aggravated driving under the influence in 61-8-1001, or a similar offense under previous laws of this state or a similar statute in another jurisdiction.

Section 61-8-1016(4)(a), MCA (emphasis added). Clinkenbeard argues that because of this subsection's "may not be given" language, the State is categorically prohibited from subsequently obtaining a warrant for a refused test if the arrested person has not previously refused a test or is a first-time offender. Clinkenbeard's argument, however, ignores the critical context provided by subsection (5) of the same statute that clearly provides the State may obtain a warrant:

> *This section does not apply to tests, samples, and analyses of blood*, breath, or urine used for purposes of medical treatment or care of an injured motorist, related to a lawful seizure for a suspected violation of an offense not in this part, *or performed pursuant to a search warrant*.

Section 61-8-1016(5), MCA (emphases added). The blood test at issue in this case was not performed under the implied consent statute; rather, it was "performed pursuant to a search warrant" lawfully obtained with probable cause as provided for in § 46-5-221, MCA, based on Clinkenbeard's driving, field tests, preliminary breath test, and admission of drinking. *See also* § 46-5-224(1), MCA (providing that blood samples may be seized pursuant to a warrant that "may yield evidence of any measured amount or detected presence of alcohol

4

or drugs in a person's body when subjected to testing"). This is not the first time we have considered this argument, despite our implied consent law being well-settled and the Legislature exercising its authority to clarify its position in a 2011 amendment to the statute.

¶7 Montana's statutory presumption of implied consent provides:

> A person who operates or is in actual physical control of a vehicle or commercial motor vehicle upon the ways of this state open to the public is considered to have given consent to a test or tests of the person's blood or breath for the purpose of determining . . . any measured amount or detected presence of alcohol or drugs in the person's body.

Section 61-8-1016(1), MCA. However, if an arrested person refuses to submit to one or more tests requested by law enforcement, the refused tests may not be given unless the person has refused a test previously or has a conviction or pending offense for a DUI or one of several other designated offenses. The "implied consent" rule is based upon the fact that driving is not a right but a privilege and a person who chooses to enjoy the privilege must "accept the concomitant responsibilities," such as impliedly consenting to the testing of bodily fluids. *State v. Michaud*, 2008 MT 88, ¶ 58, 342 Mont. 244, 180 P.3d 636. The implied consent and license seizure provisions are a civil proceeding that stand in contrast to a criminal charge of driving under the influence.

> This Court [has] pointed out that the implied consent law is a civil administrative proceeding separate and distinct from the criminal action on the charge of driving while intoxicated. Each proceeds independently of the other. There is no connection between the criminal statute prohibiting the operation of the motor vehicle while under the influence of alcohol and the statutes requiring consent to a chemical test to determine blood alcohol content.

5

*In re Suspension of the Driver's License of Blake*, 220 Mont. 27, 31, 712 P.2d 1338, 1341 (1986). The right to refuse alcohol testing provided in the statutory implied consent statute affords a driver greater protections from self-incrimination than that required by the Constitution, but the implied consent statute is not to be construed as an exception to the general requirement for a search warrant. *State v. Minett*, 2014 MT 225, ¶ 10, 376 Mont. 260, 332 P.3d 235 (citing *Nichols v. Dep't of Just.*, 2011 MT 33, ¶¶ 16, 20, 359 Mont. 251, 248 P.3d 813). "Because refusal to take the test is a matter of grace, the Legislature may contour this favor in a manner it deems appropriate." *State v. Turbiville*, 2003 MT 340, ¶ 16, 318 Mont. 451, 81 P.3d 475. Accordingly, through § 61-8-1016(4)(a), MCA, the Legislature chose to allow an arrested[1] person on their first DUI offense to revoke the consent for bodily fluids they had impliedly given through a civil statute.

¶8    The Legislature added subsection (5), then codified at § 61-8-402, in 2011. Subsection (5) provides that "[t]his section" does "*not* apply" to blood, breath, or urine tests "performed pursuant to a search warrant." (Emphasis added.) Section 61-8-1016(5), MCA. Prior to its inclusion in 2011, the statute "did not permit law enforcement to apply for a search warrant in DUI cases if an arrested person refused to submit to BAC testing." *State v. Giacomini*, 2014 MT 93, ¶ 10, 374 Mont. 412, 327 P.3d

---

[1] The Dissent attempts to draw support for its conclusion that first time DUI offenders are to be treated specially and differently from other criminal offenders by noting that the Legislature has allowed for blood search warrants only "*after*" the suspect has been arrested. Dissent, ¶ 24 n.3. The Dissent's distinction does nothing to inform any factor of the inquiry. Both an arrest and a search must be supported by probable cause. A search warrant for blood or breath evidence for a DUI must be supported by probable cause that the person is believed to be DUI. There is no validity to the distinction the Dissent draws; a search warrant for blood or breath could not be obtained without probable cause that the person was DUI and, thus, arrestable for DUI.

1054. Specifically, the prior version stated that "the refused test or tests may not be given . . . ." Section 61-8-402(4), MCA (2009). Prior to the 2011 legislative amendments, our precedent held that the search warrant exception in § 61-8-1016(5), MCA, meant that tests could only be taken pursuant to a search warrant if probable cause existed that an offense *other than the underlying DUI* had occurred. *See Giacomini*, ¶ 10 (citing *Collins v. Dep't of Just., Div. of Highway Patrol*, 232 Mont. 73, 78, 755 P.2d 1373, 1376 (1988); *State v. Thompson*, 207 Mont. 433, 435, 674 P.2d 1096-97 (1984)).

¶9      The relevant legislative history and the resultant conclusions were explored thoroughly in *City of Missoula v. Williams*, 2017 MT 282, 389 Mont. 303, 406 P.3d 8. We decline to disturb this well-settled matter. However, for purposes of contextualizing the Dissent, the most relevant passages of *Williams* are restated here:

> The statutory framework was revised in 2011 by the Legislature's passage of Senate Bill 42, which authorized law enforcement to apply for a search warrant for a blood draw where an arrested person refused to submit to BAC testing and had a prior conviction for any of the listed driving, alcohol-related driving, or drug-related driving offenses "*or a similar statute in another jurisdiction*." The amended bill was explained by a proponent:
>
>> The question is: What do you do with these people who have figured out the game? That is—"If I refuse, they don't have the evidence." And you notice that the committee amended the bill for the repeat offenders just for that reason. Because there was a general idea that we shouldn't do it for the first refusal. And what we got here is a bill to try to compel the person that fits the profile of the repeater to give evidence . . . . When you tell them, "You either give us a breath test or we go to the judge and get a warrant [for your blood,]" they're going to give you a breath test and that is the object of the exercise.

[*Second Reading of S. 42,* 62nd Leg., Reg. Sess. at 1:24:30-1:25:23 (Mont. Feb. 16, 2011) (statement of Sen. Larry Jent).]

This Court addressed a similar challenge to § 61-8-402(5), MCA, in *Giacomini*. Giacomini refused to submit to a breath test requested during a traffic stop. *Giacomini*, ¶ 4. Although Giacomini had refused to provide a BAC test in the past, law enforcement applied for and received a warrant to draw his blood pursuant to § 61-8-402(5), MCA. *Giacomini*, ¶ 5. On appeal, Giacomini argued that "his prior refusal of a breath test [was] insufficient to establish probable cause to support a search warrant to draw his blood." *Giacomini*, ¶ 12. In response, we noted that "[t]he revisions made to § 61-8-402, MCA, by Senate Bill 42 merely removed the statutory prohibition on seeking a search warrant for a blood draw" [when probable cause for the search warrant existed independently of the implied consent statutes]. *Giacomini*, ¶ 13. We explained that an arrested person's prior refusal does not by itself establish the necessary probable cause for a warrant, "but merely permits police to apply for a warrant" under § 61-8-402(5), MCA. *Giacomini*, ¶ 13.

*Williams*, ¶¶ 15-16 (emphasis in original). Hence, the revisions made to the implied consent statute by Senate Bill 42 in 2011 served to remove the statutory prohibition on seeking a search warrant for a blood draw in those cases where the arrested person has previously refused a test or been previously charged or convicted.

¶10 The revisions were in response to our decisions in *Thompson* and *Collins* where this Court decided in a narrow fashion that the implied consent statute did not apply to non-DUI crimes. Neither case involved, as here, a refusal where the underlying charge was a DUI. *Thompson* involved a negligent homicide, and *Collins* involved a civil action against police alleging assault and battery. In response to our decisions in *Thompson* and *Collins*, the Legislature adopted Senate Bill 42 to clarify that the prohibition of tests for first time offenders did not apply where there was probable cause for a search warrant for a criminal

8

offense. Importantly, the Legislature did not provide that DUIs were exempt from the list of criminal offenses for which a warrant under subsection (5) could be obtained. Thus, harkening back to *Blake*, the Legislature understood the distinction between a criminal statute and the implied consent statute and enacted legislation—subsection (5)—that ensured there would be no connection between the criminal statute prohibiting the operation of the motor vehicle while under the influence of alcohol and the civil implied consent statute. We thus explained in *Williams*, that "§ 61-8-402(5), MCA, does not supply probable cause, but allows a mechanism to gather evidence against those who have either refused a test in the past or been charged with or convicted of various, but specifically enumerated offenses." *Williams*, ¶ 16. Accordingly, the Legislature did nothing that affected law enforcement's general authority to secure a warrant based on probable cause for a criminal offense; in fact, the clear and unambiguous language of the 2011 amendment demonstrates that the Legislature intended law enforcement to be able to secure a search warrant based on probable cause for DUI.

¶11 Clinkenbeard does not contest there was probable cause to issue the search warrant. Nonetheless, Clinkenbeard and the Dissent continue to insist that because this is Clinkenbeard's first DUI offense, law enforcement could not secure a warrant based on probable cause. We again reject such an argument, recognizing that as soon as police obtained a warrant, the case no longer fell under the implied consent statute and the police no longer acted in accordance with the principles of Montana law in obtaining a search warrant for Clinkenbeard's blood. Nor does *Williams* stand for Clinkenbeard's assertion

9

that a prior DUI conviction or a refusal is required as a prerequisite to apply for a search warrant. In *Williams*, this Court rejected an argument that an issuing judge should consider facts outside the four corners of the search warrant affidavit; there, whether two statutes were legally and statutorily similar for purposes of the implied consent statute. *Williams*, ¶¶ 19-21. In addition to concluding that legally examining whether the two offenses were statutorily similar would violate *Franks v. Delaware*, 438 U.S. 154, 165, 98 S. Ct. 2674, 2681, we noted that requiring the issuing judge to conduct an inquiry into the legal similarity of Montana and another state's DUI statutes would place an impractical and impossible burden on police officers and issuing judges prior to applying for or issuing a search warrant.[2] *Williams*, ¶¶ 19-21. This Court explained that "significant to resolving the underlying issue are well-established principles for reviewing the sufficiency of a search warrant application . . ." and that "[s]uch an inquiry [as to the legal similarity of two state's statutes], which is entirely a question of law, is beyond review of the 'facts' set forth within the four corners of the application and otherwise unnecessary for a determination of

---

[2] The Dissent faults our holding in *Williams* for failing to address "the question squarely presented to it, which was whether a prior DUI conviction was not 'similar' to Montana's for penalty purposes, but was similar to Montana's for the purpose of authorizing a blood search warrant." Dissent, ¶ 34. The Dissent misunderstands the analysis and well-established case law pertaining to *Franks*. Under a "*Franks* challenge," facts within the four corners of the affidavit that are successfully shown to be false are excised and probable cause is assessed based on the remaining information. "There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at 171, 98 S. Ct. at 2684. the Court in Williams was exercising appropriate judicial restraint in not reaching an issue that well-established case law held should not be addressed. It was never asserted that Williams did not have a previous conviction or that any of the facts in the affidavit were false. Thus, the Court was limited to the averments within the four corners of the affidavit. The Dissent would have this Court reach beyond what is necessary to resolve the case to establish a new rule of law, i.e., whether an Arizona DUI conviction is the same as a Montana DUI conviction for purposes of the civil implied consent statute when such a conclusion was immaterial under *Franks* to the issuance of the warrant.

probable cause." *Williams*, ¶ 17. Although the defendants in *Williams* and *Giacomini* had prior refusals, this was immaterial to the underlying premise we established in both cases—that the ability to apply for a warrant pursuant to § 46-5-221, MCA, based on probable cause the person is driving under the influence, is an entirely separate legal mechanism from the implied consent statute to obtain tests.

¶12 The Dissent implores this Court to "Stick to Our Business"; decries that we have "misinterpreted the law"; and proclaims that it is the "Legislature's job to address" policy considerations underlying the DUI statutory scheme. Dissent, ¶¶ 53-54. The Dissent's analysis is nothing short of alarming. The Dissent suggests there is "a better way" and that is "to rely upon our tried-and-true canons of statutory interpretation" to correctly give effect to legislative "intent." However, this Court should not interpret Senate floor debate, as the Dissent does, when the Legislature has spoken clearly and unambiguously through the plain language of its statutory enactments, as it has here. In clear contravention to the plain language of the implied consent statute, the Dissent argues the only way to "properly harmonize the statute, [is to read] subsection 5 . . . to only exempt search warrants for crimes that do not fall under the scope of § 61-8-2016, MCA." Dissent, ¶ 46. "In the construction of an instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-4-101, MCA. In contravention to these clear canons of construction, the Dissent would omit the language in subsection (5), that "[t]his section," meaning the implied consent statute, "does not apply to tests . . . performed

11

pursuant to a search warrant," and add, "except for when it comes to first time DUIs." In contrast, the Legislature was clear in enacting subsection (5) that it intended the implied consent "favor" the Legislature gives to first-time offenders would not apply to the exclusion of search warrants for tests based on probable cause. While unnecessary, the Dissent's recitation of legislative debate history only supports this Court's statutory interpretation and the intent underlying the Legislature's 2011 amendments. The Legislature responded to our decisions in *Thompson* and *Collins*—which the Dissent now seeks to resurrect—by enacting subsection (5). Since 2011, the Legislature has not substantively modified any relevant provision of the implied consent statute, which is their prerogative to do, in response to decisions from this Court. Presumably this is because the Legislature deems the language clear on its face after the 2011 amendments and because this Court has consistently interpreted that either method—implied consent under the statute or obtaining a search warrant—can be an effective means to executing a constitutionally permissible search.

¶13 Fundamentally, the Dissent fails to grasp that the implied consent and license seizure provisions of the consent statute address the giving and withdrawal of consent and are separate and distinct from the criminal charge of driving under the influence. Unfortunately, the Dissent would have us "begin at the beginning," Dissent, ¶ 16, and turn back the pages of nearly 15 years of legislative history and court precedent to 1984 and 1988 when *Thompson* and *Collins*, respectively, were decided. The Dissent would ignore the actions of the Legislature which has seemingly accepted our consistent interpretation

12

over the past decade and, instead, apply an incorrect application of statutory interpretation and canons of construction. The Dissent proclaims that the Legislature's intent is "uniform and explicit." Dissent, ¶ 24. However, over a decade ago, in *Giacomini*, this Court placed the same interpretation and statutory construction on the Legislature's 2011 amendments as the Court does today, and the Legislature has not acted to correct what the Dissent describes as the obvious intent of "every legislator and advocate." Dissent, ¶ 24.

¶14 However, the greatest concern, and one the 2011 Legislature had as well, with the Dissent's interpretation of the implied consent statute—a categorical prohibition on warrant-based searches for first-time suspected offenders—is a result that would carve out an exception for a particular offense from basic and elementary search and seizure precedent that allows a search pursuant to a judicially authorized warrant. The Dissent's interpretation would provide unprecedented legal protections and incentives for drivers to refuse to consent to testing. Unfortunately, the Dissent's ill-conceived analysis is fodder for litigants who similarly will argue our precedent is inconsistent, is bad law, is legislation from the bench, and who will recycle floor debates, thereby inviting another round of litigation on a topic fully explored by the judicial and legislative branches and clearly decided by the Legislature over a decade ago. As the District Court recognized, Montana has a strong interest in decreasing DUI-related traffic accidents and deterring people from driving under the influence.[3] The District Court explained, "It is antithetical that the

---

[3] The Dissent advertises that this "is the Legislature's job to address." No member of this Court would dispute that the Legislature is charged with establishing criminal offenses and penalties; indeed, in our next sentence, we observe that the District Court was considering the Legislature's mandated role in protecting its citizens from drunk drivers.

13

[L]egislature desired to create special protections for drunk drivers who refuse a test on the first DUI." We decline to adopt such an exception and instead hold that the State may obtain a lawful warrant pursuant to § 46-5-221, MCA, when there is probable cause for the officer to believe a driver is committing the offense of DUI, regardless of whether that person has refused to provide a sample of their breath, blood, urine, or other bodily substance under the implied consent statute.

## CONCLUSION

¶15    The District Court is affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ KATHERINE M BIDEGARAY
/S/ BETH BAKER
/S/ JIM RICE

Chief Justice Cory J. Swanson, dissenting.

¶16    I dissent from the Court's error of statutory construction because it upends the Legislature's clearly established policy of DUI enforcement, muddies our own precedent, and injects confusion into the law. To understand why, let's begin at the beginning.

¶17    At issue is § 61-8-1016, MCA, which governs how a law enforcement officer should respond to a person's refusal to provide a blood or breath test pursuant to a Driving Under the Influence investigation.

> (1)(a) A person who operates or is in actual physical control of a vehicle or commercial motor vehicle upon the ways of the state open to the public is

14

considered to have given consent to a test or tests of the person's blood or breath for the purpose of determining any measured amount or detected presence of alcohol or blood or oral fluid for the purpose of determining any measured amount or detected presence of drugs in the persons' body.

.   .   .

(2)(a) The test or tests must be administered at the direction of a peace officer when:

.   .   .

(iii) the peace officer has probable cause to believe that the person was driving or in actual physical control of a vehicle or commercial motor vehicle
(A) in violation of driving under the influence, as provided in 61-8-1002, and the person has been placed under arrest; [1]

.   .   .

(4)(a) If an arrested person refuses to submit to one or more tests requested and designated by the peace officer, the refused test or tests may not be given unless the person has refused to provide a breath, blood, urine, or other bodily substance in a prior investigation in this state or under a substantially similar statute in another jurisdiction or the arrested person has a prior conviction or pending offense for a violation of 45-5-104, 45-5-106, 45-5-205, or driving under the influence, including 61-8-1002, an offense that meets the definition of aggravated driving under the influence in 61-8-1001, or a similar offense under previous laws of this state or a similar statute in another jurisdiction.
(b) On the person's refusal to provide the breath, blood, urine, or other bodily substance requested by the peace officer pursuant to subsection (1) and this subsection (4) may apply for a search warrant to be issued pursuant to 46-5-224 to collect a sample of the person's blood or oral fluid for testing.

.   .   .

(5) This section does not apply to tests, samples, and analyses of blood or breath used for purposes of medical treatment or care of an injured motorist,

---

[1] The pre-arrest Preliminary Alcohol Screening Test may be administered when a motorist is "detained" and the officer has "particularized suspicion" of a DUI crime.   Section 61-8-1016(2)(a)(i), MCA.

related to a lawful seizure for a suspected violation of an offense not in this part, or performed pursuant to a search warrant.

Section 61-8-1016, MCA (2021). The search warrant evidence collection statute cited herein states:

A warrant may be issued under this section to search for and seize any:
(1) evidence, including blood samples that may yield evidence of any measured amount or detected presence of alcohol or drugs in a person's body when subjected to testing;
(2) contraband; or
(3) person for whose arrest there is probable cause, for whom there has been a warrant of arrest issued, or who is unlawfully restrained.

Section 46-5-224 (2021), MCA.

## The Long March Through Implied Consent

¶18    The implied consent statute has a long history. Montana created its first version of the implied consent statute in 1971 which read:

(c) If a person under arrest refuses upon the request of a peace officer to submit to a chemical test designated by the arresting officer as provided in paragraph (a) of this section, none shall be given . . . .

Section 32-2142.1, RCM (1971).

¶19    This Court addressed the "none shall be given" language in *State v. Thompson*, 207 Mont. 433, 435, 674 P.2d 1094, 1095 (1984). In *Thompson*, the defendant was convicted of negligent homicide. *Thompson*, 207 Mont. at 435, 674 P.2d at 1095. During the investigation, the officer asked the defendant for consent to a blood draw, but was refused. *Thompson*, 207 Mont. at 434, 674 P.2d at 1095. Once the officer learned the other motorist had died, he informed Thompson he was now a suspect for the offense of negligent homicide, and his right to refuse under the DUI charge did not apply. *Thompson*,

16

207 Mont. at 435, 674 P.2d at 1095. The officer obtained a blood draw, without consent or a search warrant. *Thompson*, 207 Mont. at 435, 674 P.2d at 1095. We agreed with the State that the prohibition of blood tests upon a suspect's refusal was limited to DUI charges, not to negligent homicide charges. The blood was admissible, and Thompson's conviction was affirmed. *Thompson*, 207 Mont. at 437, 674 P.2d at 1096.[2]

¶20    Then in *Collins v. State, Department of Justice, Division of Highway Patrol*, 232 Mont. 73, 83, 755 P.2d 1373, 1379 (1988), we held a search warrant for blood tests was permissible because it was not solely a DUI case.

¶21    The Montana Legislature amended the implied consent statute in 1997, adding the initial version of what is currently subsection (5):

> (9) This section does not apply to blood and breath tests, samples, and analyses used for the purposes of medical treatment or care of an injured motorist or related to a lawful seizure for a suspected violation of an offense not in this part.

Section 61-8-402(10), MCA (1997 Mont. Laws ch. 55 § 3). This initial version largely mirrored the exceptions to the statute recognized by *Thompson* and *Collins*, which allowed blood tests for crimes not covered by the implied consent statute.

¶22    The next revision to the implied consent statute came in 2011, modifying the previous implied consent subsection as follows:

> (4) If an arrested person refuses to submit to one or more tests requested and designated by the officer as provided in subsection (2), the refused test or tests may not be given except as provided in subsection (5).

---

[2] We later clarified that blood evidence "forcibly" drawn from a suspect without a search warrant is not admissible. *State v. Stueck*, 280 Mont. 38, 42, 929 P.2d 829, 832 (1996).

(5) If the arrested person has refused to provide a breath, blood, or urine sample under 61-8-409 or this section in a prior investigation in this state or under a substantially similar statute in another jurisdiction or the arrested person has a prior conviction or pending offense for a violation of 45-5-104, 45-5-106, 45-5-205, 61-8-401, 61-8-406, or 61-8-411 or a similar statute in another jurisdiction, the officer may apply for a search warrant to be issued pursuant to 46-5-224 to collect a sample of the person's blood for testing.

. . .

(11) This section does not apply to tests, samples, and analyses of blood or breath used for purposes of medical treatment or care of an injured motorist, related to a lawful seizure for a suspected violation of an offense not in this part, or performed pursuant to a search warrant.

Section 61-8-402(4), (5), (11), MCA (2011 Mont. Laws ch. 283, § 2) (2011 revisions underlined). The same Legislative bill amended the search warrant authorization statute.

**What may be seized with a search warrant.** A warrant may be issued under this section to search for and seize any:
(1) evidence, including blood samples that may yield evidence of any measured amount or detected presence of alcohol or drugs in a person's body when subjected to testing;
(2) contraband; or
(3) person for whose arrest there is probable cause, for whom there has been a warrant of arrest issued, or who is unlawfully restrained.

Section 46-5-224, MCA (2011) (2011 Mont. Laws ch. 283, § 1) (2011 revisions underlined).

¶23 We should not automatically refer to legislative history when interpreting a statute. Our journey should begin and end with the plain text of the law. *W. Energy Co. v. Dep't of Revenue*, 1999 MT 289, ¶ 11, 297 Mont. 55, 990 P.2d 767. But when the statute is unclear on its face and susceptible to multiple interpretations, then reliance upon legislative history is appropriate to aid our construction. *City of Missoula v. Pope*, 2021 MT 4, ¶ 10, 204 Mont. 416, 478 P.3d 815. The goal of this endeavor is to "read and construe each

18

statute as a whole, both to give effect to the purpose of the statute and to avoid an absurd result." *Pope*, ¶ 10.

¶24 The comments of a single member should not be taken to impute the intent of the entire legislative body. *See Garcia v. United States*, 469 U.S. 70, 76, 105 S. Ct. 479, 483 (1984) (the passing comments of one of the legislators and casual statements from floor debates should not be applied to the legislative body as a whole). But here, the statements of every legislator and advocate were uniformly supportive of the plain text of the statute; not a single dissenting voice suggested a different meaning or interpretation of Senate Bill 42 (SB 42). This uniform and explicit representation of legislative intent is relevant in our role to avoid interpretating the statute to obtain "an absurd result." *State v. Garcia*, 2025 MT 25, ¶ 13, 420 Mont. 283, 563 P.3d 277. Absurd according to whom? According to the Legislature, not the District Court's post-hoc rationalization "[i]t is antithetical that the legislature desired to create special protections for drunk drivers who refuse a test on the first DUI." To the contrary, the legislative history confirms that is exactly what the Legislature did, and exactly what it intended to do.[3] To hold otherwise is to produce an

---

[3] Not only did the Legislature refuse to permit a blood search warrant for first-time DUI offenders, but the Legislature allowed application for blood search warrants for DUI offenses *after* the suspect had been arrested. *See* § 61-8-1016(2)(a), (4)(a), MCA (applied to "arrested person"). Probable cause for a search warrant is satisfied upon proving a fair probability that evidence of a crime will be found in a particular place. *State v. Zito*, 2006 MT 11, ¶¶ 6-9, 333 Mont. 312, 143 P.3d 108; *State v. Burchill*, 2019 MT 285, ¶ 17, 398 Mont. 52, 454 P.3d 633. This statute requires an officer to make an arrest before obtaining a search warrant to collect evidence from the suspect. In any other investigation, those evaluations and decisions may be at quite different times. This further indicates the Legislature singled out first time DUI offenses for greater protection from law enforcement investigation than other types of crimes.

19

absurd (to the Legislature's objective) result. "In the construction of a statute, the intention of the legislature is to be pursued if possible." Section 1-2-102, MCA.

¶25  The Montana Legislature adopted these amendments in 2011 in response to the Court's holdings in *Thompson* and *Collins*. Senator Jim Shockley, the bill sponsor, stated to the Senate Judiciary Committee that the purpose of the bill was to create a way for officers to draw blood evidence for DUI investigations. *Hearing on SB 42, before the Mont. Sen. Jud. Comm., 62nd Leg. Reg. Sess.* 8:46:01–8:46:08 (Jan 20, 2011).

¶26  Mark Murphy supported the bill on behalf of the Montana County Attorneys Association. He informed the Senate Judiciary Committee the Court's holdings discussed above prevented law enforcement officers from obtaining even blood search warrants for DUI investigations:

> One small line in the implied consent adopted many years ago that said that if the defendant refuses, no test will be given. The Courts interpreted that one small piece of information to prohibit even obtaining warrants in DUIs.

*Hearing on SB 42*, 8:58:12–8:58:35 (Jan 20, 2011).

¶27  Senator Jeff Essmann, an attorney, presciently asked why this bill was even necessary because a court has general search warrant authority to order the collection of any evidence:

> Sen. Essman: Sen. Shockley, . . . I believe that law enforcement now has the right to obtain a search warrant to draw blood if there is probable cause . . . . That's whether there has been a prior offense or not. Will the effect of . . . adding this into statute limit their ability to do that, which I believe exists under current law?
>
> Sen. Shockley: Mr. Chairman, Senator. I believe you can still do it . . . under current law, it's not laid out clearly, and it's not being done. I thought Mr. Murphy over there was going to comment on this.

20

Sen. Shockley (to Mr. Murphy): The question to me, Mr. Murphy, was whether or not, under current law, you can draw blood in a DUI situation.

*Hearing on SB 42, before the Mont. Sen. Jud. Comm., 62nd Leg. Reg. Sess.* 8:29:28–8:30:28 (Feb. 14, 2011). Mr. Murphy's redirected response apparently convinced the Senate Judiciary Committee they needed to pass this revision based upon its understanding of the law at that time:

As current law exists, under the implied consent law, the rule is that if the person refuses at this point, no test will be given. And that means that no search warrant can be obtained after the refusal. And so the central portion of the main bill is to remove that 'no test will be given' and allow search warrants to be obtained.

*Hearing on S.B 42,* 8:30:56–8:31:23 (Feb. 14, 2011). Sen. Shockley went as far as to say that he "adopts Mr. Murphy's position." *Hearing on SB 42,* 8:32:36–8:32:39 (Feb. 14, 2011).

¶28 The Committee's follow up discussion affirmed its understanding that blood search warrants for DUI offenses were not allowed under the pre-2011 law. *Hearing on SB 42*, 8:31:31–8:32:34, 8:32:55–8:34:40 (Feb. 14, 2011). During debate in the full Senate, Senator Williams asked:

Sen. Williams: If I, who have never had a DUI, get stopped, this doesn't apply to me?

Sen. Shockley: Mr. Chairman, Senator, that's true.

Sen. Williams: So, my friend, who did have a DUI once, last year, she gets stopped, my understanding of this process is that if she says no, I'm not gonna do it, but she had a DUI a few years ago, they can actually strap her down, stick a needle in her arm, and take the blood anyway.

21

Sen. Shockley: Mr. Chairman, Senator, that is true. Talking to law enforcement types, that very very very rarely happens that anybody is that obstinate, but there is a warrant that's issued by the court, and you have to cooperate with it.

*Authorize Warrants to Obtain Blood or Breath Test in DUI Cases,* Second Reading of Senate Bill 42, *62nd Leg. Reg. Sess.*, at 9:22:34–9:23:26 (Feb. 16, 2011). Senator Jent further explained the intent of the statute to the Senate floor.

The question is what do you do with the people who have figured out the game, that is, if I refuse, they don't have the evidence. You notice that the committee amended the bill to repeat offenders, just for that reason. *Because there was a general idea that we shouldn't do it for the first refusal.*

Second Reading, at 9:24:38–9:24:57 (Feb. 16, 2011) (Statement of Sen. Jent) (emphasis added). The floor discussion made it clear to the Senators what they passed; they created different procedures for first-time offenders versus repeat offenders.

¶29 The House was also in agreement with the Senate. Representative Menahan noted in the House floor debate:

[Senator Shockley] wanted law enforcement to have the authority to obtain a search warrant in all DUI cases. And there was sort of an interesting glitch that was in Montana's law . . . that says if a person refuses a test given . . . it says no other test shall be given . . . . *The Senate was also concerned about the overreaching nature of law enforcement in some of these cases*, and so they put a provision on this bill that says the search warrant for blood samples can be obtained if the offender has a prior refusal, a prior DUI conviction, or pending DUI offense . . . trying to make it fair for the defendant as well as giving the police more authority. *So, there are actually more protections here for people in this particular circumstance than those who commit other crimes.*

*Authorize Warrants to Obtain Blood or Breath Test in DUI Cases*, Second Reading of SB 42, *62nd Leg. Reg Sess.*, at 9:18:05–9:20:07 (Mar. 19, 2011) (emphasis added). The policy reason behind this section is clear: to protect first-time offenders from DUI blood

22

search warrants. The legislators considered whether to allow first-time blood draws; they decided otherwise.

> Under this bill, the first time, the first offense, they can't draw blood. . . . But on the second offense, they can get a search warrant if they establish probable cause before a judge.

Second Reading at 9:25:27–9:25:40 (Mar. 19, 2011) (statement of Rep. Peterson).

¶30 In the hearing in the House Judiciary Committee, Senator Shockley stated:

> [R]ight now, the way that the statutes are written, you cannot get a warrant from a court to draw blood from a suspect who the officer believes is impaired by alcohol or drugs . . . . What this does provide is a constitutional way for law enforcement to conduct a search to gather evidence against a person believed to have committed a crime . . . but there's a mulligan. I don't golf, but I understand that if you golf and you mess up the first shot . . . it doesn't count. And that's what this is, a mulligan. *This bill does not apply, you can't get a warrant, unless the person has refused to cooperate with law enforcement before, refused to either blow or give blood, or has a . . . previous DUI, or is awaiting trial on DUI.* In other words, this is the second mistake.

*Hearing on SB 42, before the Mont. House Jud. Comm., 62nd Leg. Reg. Sess. at* 8:58:58–9:00:37 (Mar. 17, 2011) (emphasis added). Sen. Shockley explained to the House Judiciary Committee why he included the mulligan.

> Sen. Shockley: As [the bill] came out [of the interim committee] . . . there is no mulligan. . . . [The mulligan] was a compromise to get the bill out, it won't happen without it. The second time a person refuses to cooperate, or has a DUI, or has pending charges, then you can get the warrant.
>
> .  .  .
>
> I would have liked and originally wanted a DUI warrant for the first time you were pulled over. I couldn't get it.

*Hearing on SB 42*, at 9:53:52–9:54:27, 9:58:43–9:58:48 (Mar. 17, 2011).

¶31    I agree with the Majority's objection to lengthy recitations of legislative history and floor debate as a general rule. Opinion, ¶¶ 9, 12. But it was necessary because the preceding eleven paragraphs aid our construction of an unclear statute subject to differing interpretations. Having taken that long journey, we understand the limitation upon blood search warrants for first-time DUI offenders was a necessary compromise merely to pass the legislation authorizing *any* blood search warrants for repeat DUI offenders. The Majority's holding contrary to this intent creates an absurd result.

**Our Inconsistent Caselaw**

¶32    This Court's precedent in *Giacomini* and *Williams* supports the Defendant's argument, to the extent they are still good law. In *Giacomini*, the defendant refused to submit to a breath test, after having refused a test on a prior occasion. *Giacomini*, ¶ 4. The officer then applied and received a warrant for a blood draw under § 61-8-402(5), MCA (2011). *Giacomini*, ¶ 5. Giacomini challenged the legality of the blood draw. We affirmed the conviction due to the 2011 legislative changes. "Prior to 2011, this statute did not permit law enforcement to apply for a search warrant in DUI cases if an arrested person refused to submit to BAC testing." *Giacomini*, ¶ 10. But "[t]he revisions made to § 61-8-402, MCA, by Senate Bill 42 merely removed the statutory prohibition on seeking a search warrant for a blood draw in those cases where the arrested person has previously refused a test." *Giacomini*, ¶ 13. We therefore ratified the 2011 Legislature's understanding of the pre-2011 law and our prior holdings in *Thompson* and *Collins*: the State could not have applied for a DUI blood search warrant prior to 2011. After the

24

amendments, the State could only apply for search warrants after a prior refusal or conviction.

¶33 Adding to the confusion, the Court decided *Minett* after *Giacomini*, but its holding applied to a DUI offense under the 2009 Montana statute. There, the Court held an officer investigating a third offense DUI had a right to seek a search warrant for blood evidence when Minett refused to consent to the test. The Court held the pre-2011 language that tests "may not be given" prohibited a forcible blood test without a search warrant, but the officer had the authority to seek a search warrant for evidence, just like investigating any other criminal offense. *Minett*, ¶¶ 11–12. The *Minett* Court labeled as dicta the *Giacomini* language stating a DUI blood search warrant was not allowed prior to 2011. *Minett*, ¶ 13, (citing *Giacomini*, ¶ 10). Yet today the Majority approvingly cites *Giacomini's* analysis that the 2011 statutes removed the barrier to obtaining blood search warrants for DUI offenses, Opinion, ¶ 8, apparently contradicting its holding and agreeing with the Dissent.

¶34 But wait, it gets worse. After *Minett*, the Court again cited *Giacomini's* interpretation that the 2011 legislation removed the previous prohibition, thus allowing an officer to obtain a blood search warrant for a second offense DUI. *Williams*, ¶¶ 15–16 (citing *Giacomini*, ¶¶ 12-13). However, Williams's prior DUI was from the State of Arizona, and he challenged the Montana officer's right to seek a search warrant because Arizona's DUI law was arguably not "similar" to Montana's under the Court's holding in *State v. McNally*, 2002 MT 160, 310 Mont. 396, 50 P.3d 1080, and therefore he did not have a prior offense which would allow a blood search warrant. *Williams*, ¶ 13. Regrettably, this Court declined to address the question squarely presented to it, which was

25

whether a prior DUI conviction was not "similar" to Montana's for penalty purposes, but was "similar" to Montana's for the purpose of authorizing a blood search warrant. *Williams*, ¶¶ 19–22.

¶35 This did not go unnoticed. Justice Sandefur criticized the majority for ducking the necessary inquiry into Arizona's DUI statutes. *Williams*, ¶¶ 30–33 (Sandefur, J., specially concurring). The Majority criticized Justice Sandefur at the time and now doubles down on this Dissent for digging up old bones. But his critique is still relevant today. The magistrate is not required at the time of reviewing a search warrant application to go beyond the four corners of the affidavit to determine whether Arizona DUI's are similar enough to Montana's. Rather, a defendant has a viable avenue to later challenge the blood search warrant—a *Franks* or *Worrall* challenge—based upon the alleged factual inaccuracy of the Arizona DUI conviction being a qualifying predicate for the blood warrant. *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978); *State v. Worrall*, 1999 MT 55, 293 Mont. 439, 976 P.2d 968 (modified in *State v. Kasparek*, 2016 MT 163, ¶ 12, 384 Mont. 56, 375 P.3d 372); *State v. Estes*, 2017 MT 226, ¶ 24, 388 Mont. 491, 403 P.3d 1249. The *Williams* Court answered that question by merely stating the magistrate had probable cause to grant the search warrant, which is a different question and does not answer whether the predicate requirement of a prior DUI or refusal was satisfied.

¶36 In *Williams*, Justice Sandefur concurred in the Court's result affirming the conviction, because he opined the 2011 statutory amendments to the implied consent law did not preclude an officer from applying for a search warrant on DUI cases under the general search warrant investigative procedure. *Williams*, ¶ 35. Citing *Minett*, he argued

the pre-2011 statutes permitted officers to obtain a search warrant for blood evidence on a DUI case, and any interpretations to the contrary were dicta or a "*misperceived loophole protecting DUI-related offenders.*" *Williams*, ¶ 39 (emphasis in original). Justice Sandefur argued officers still retained the general search warrant authority to obtain evidence of any crime, and he invited the Legislature to "clean up this mess at its earliest convenience." *Williams*, ¶ 40.

¶37　　The Majority has now adopted Justice Sandefur's position. What has changed since 2017? Not the substance of the statute. The Legislature took up Justice Sandefur's invitation in the 2019 Session. Senator Keith Regier sponsored Senate Bill 65 to reorganize the State's DUI laws. *SB 65, 66th Leg. Reg. Sess.* (Mont. 2019). It also included a revision to the implied consent statute, removing the safe harbor from search warrants for first-time offenders. Sen. Regier explained that while most of the bill focused on reorganization, "a search warrant for a blood draw will now be available at first implied consent refusal." *Hearing on SB 65, before the Mont. Sen. Jud. Comm., 66th Leg. Reg. Sess.* at 9:05:33 (Jan 22, 2019). But the change never happened, because Senate Bill 65 did not pass.

¶38　　In 2021, Senator Regier carried another bill to reorganize the DUI statutes, but with the explicit and repeated proviso that his bill contained no substantive changes to the law, it was merely amending them for clarity and organization. *Hearing on SB 365, before the Mont. Sen. Jud. Comm., 67th Leg. Reg. Sess.*, 13:07:13–13:07:22 (Feb. 27, 2021); *Generally revise and reorganize driving under the influence laws, Second Reading of SB 365, 67th Leg. Reg. Sess.*, 22:16:10–22:16:26 (Mar. 1, 2021). While the 2021 text has been amended slightly, the meaning remains the same. *See* § 1-2-203, MCA ("Where a

27

section or part of a statute is amended, it is not to be considered as having been repealed and reenacted in the amended form, but the portions which are not altered are to be considered as having been the law from the time when they were enacted.").

## There's a Better Way

¶39 I suggest there is a better way to answer this question: rely upon our tried-and-true canons of statutory interpretation to correctly give effect to the text consistent with the legislative intent, instead of nullifying both. Four different canons of interpretation guide our way on this path: (1) presumption against ineffectiveness; (2) harmonious reading of multiple provisions; (3) *ejusdem generis* or list of like items; and (4) specific controls over the general.

### Presumption Against Ineffectiveness

¶40 "An interpretation that gives effect is always preferred over an interpretation that makes the statute void or treats the statute as mere surplusage." *American Linen Supply Co. v. Dep't of Revenue*, 189 Mont. 542, 544, 617 P.2d 131, 133 (1980) (citing § 1-3-232, MCA). "We avoid constructions that render any section of the statute superfluous or fail to give effect to all of the words used." *Mont. Indep. Living Project v. City of Helena*, 2021 MT 14, ¶ 11, 403 Mont. 81, 479 P.3d 961 (citation omitted).

¶41 The problem begins with the last dependent clause of subsection (5), "or performed pursuant to a search warrant." The Majority has allowed this tail to wag the entire dog, meaning an officer may seek a general search warrant for a first-time DUI offender's blood, placing that warrant entirely outside the implied consent scheme in § 61-8-1016, MCA.

28

The Majority's reading of subsection (5) would render (4)(a) contradictory and (4)(b) superfluous.

¶42   The only way to interpret the statute that does not render the Legislature's action ineffective is to construe subsections (4)(a) and (4)(b) as creating a specific exception to a law enforcement officer's ability to get a blood search warrant for a crime, namely a first-time DUI offender who has not previously refused a blood or breath test. Subsection (5) then clarifies this restriction does not apply to blood search warrants for offenses not covered under § 61-8-1016, MCA.  This reading of the statute reaffirms the legislative acts and this Court's precedent.  It also happens to give effect to all of the provisions of the statute as required by § 1-2-101, MCA.

**Harmonious Reading of Multiple Provisions**

¶43   "Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all."  Section 1-2-101, MCA.  "[W]hen interpreting statutes within an act, we interpret individual sections of the act in a manner that ensures coordination with the other sections of the act."  *City of Missoula v. Shumway*, 2019 MT 38, ¶ 9, 394 Mont. 302, 434 P.3d 918 (citation omitted).  To harmonize the reading of two conflicting subsections, this Court should read the provisions that renders them compatible with each other, and not contradictory.  *See* Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts,* 180–181 (2012).

¶44   If an officer, regardless of the prior offense status of the suspect, could obtain a search warrant and perform the test under subsection (5), then why would (4)(a) prohibit an officer from doing so?  And why would (4)(b) authorize a test pursuant to a warrant for

29

second and subsequent offenses if that warrant was already authorized under (5)? According to the above guidance, we presume the drafters did not intentionally contradict themselves and their stated purpose when enacting all of these provisions *in the same bill*. One can attempt to overcome that issue by reading the word "warrantless" into subsection (4)(a). In addition to needlessly inserting a word into the statute, this interpretation again renders subsection (4)(b) superfluous or ineffective. *See* § 1-2-101, MCA ("the judge is . . . not to insert what has been omitted or to omit what has been inserted.").

¶45    In subsection (4)(b), the statute authorizes "pursuant to subsection (1) and this subsection (4)[, an officer] may apply for a search warrant to be issued pursuant to 46-5-224." Section 61-8-1016(4)(b), MCA (2011). Subsection (4)(b) conditions when an officer may seek a warrant. He or she may only do so in compliance with "subsection (1) and this subsection (4)." If subsection (4)(a) applies to a *warrantless* test, then why would it be necessary to authorize warrants under (4)(b) and condition them on (4)(a)? And if subsection (5) allows officers to sidestep subsection (4) and pursue a warrant through §§ 46-5-221 and -224(1), MCA, then the procedure to obtain the § 46-5-224 search warrant under (4)(b) would be entirely unnecessary. This is even more unlikely when the same bill amended the search warrant statute to more clearly include DUI search warrant evidence it authorized. Senate Bill 42 amended § 46-5-224, MCA, to include "evidence, including blood samples that may yield evidence of any measured amount or detected presence of alcohol or drugs in a person's body when subjected to testing" to be obtained under § 61-8-402(4), MCA (2011), now codified at § 61-8-1016(4)(b), MCA.

30

Section 46-5-224, MCA (2011) (2011 Mont. Laws ch. 283, § 1) (2011 revisions underlined).

¶46   To properly harmonize the statute, subsection (5) should be read to only exempt search warrants for crimes that do not fall under the scope § 61-8-1016, MCA. This is consistent with *Thompson* and *Collins*, which informed the Legislature's actions when it crafted this language. It also fulfills our duty to "give effect to" all of subsection (4).

### *Ejusdem Generis*

¶47   This canon derives from the rule of *ejusdem generis*, or "same of a kind or class." "[W]hen a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." *Mattson v. Mont. Power Co.*, 2009 MT 286, ¶ 32, 352 Mont. 212, 215 P.3d 675. When the initial terms all belong to an obvious and readily identifiable class, one presumes the author has crafted a category including all of the items. Scalia & Garner, at 199.

¶48   The introductory language in (5) ("This section does not apply to . . .") tips us off that all three exceptions are of the same kind or class, namely for purposes not covered by the implied consent statute in subsections (1) and (4). The exceptions are for tests (1) "obtained for purposes of medical treatment"; (2) "related to a lawful seizure for an offense not covered" by § 61-8-1016, MCA; and (3) "performed pursuant to a search warrant." Section 61-8-1016(5), MCA. The rule of *ejusdem generis* interprets the third example as a catchall exception for search warrants not relating to offenses covered by § 61-8-1016, MCA.

¶49 The first two exceptions are activities which are clearly not a DUI investigation. The third exception was added to the list in the 2011 legislation and adopted with and at the same time as subsection (4), which contained the refusal and warrant scheme for repeat offenders. Its placement in (5) can only be interpreted to mean "all other search warrants" not applicable to this section, i.e. non-DUI offenses. The Majority faults this construction on the basis that it inserts words into the statute. Yet it is the only way to interpret this list of like items to which this statutory section is inapplicable, and it avoids the error of omitting subsection (4)(b) from the statute. It also happens to render the entire section comprehensible rather than absurd.

**Specific Controls Over General**

¶50 Under the general-specific canon, when a "general statute and a specific statute are inconsistent, the specific statute governs, so that a specific legislative directive will control over an inconsistent general provision." *Brookins v. Mote*, 2012 MT 283, ¶ 28, 367 Mont. 193, 292 P.3d 347; *accord* § 1-2-102, MCA.

¶51 Here, subsections (4)(a) and (4)(b) establish a detailed statutory scheme, which creates a search warrant safe harbor for first-time DUI offenders. Under this scheme, a suspect under arrest for DUI can refuse a blood or breath test, and an officer cannot circumvent that refusal with a search warrant if the suspect: (1) has never refused a test; (2) has no prior DUIs in Montana or under other similar statutes in different states; and (3) has no pending DUI charges. On the other side, there is the conflicting general subsection (5), which obliterates (4)(a) and (4)(b), and allows an officer to circumvent the suspect's first-time refusal with a search warrant. Under § 1-2-102, MCA, and the

32

general/specific canon, this Court should hold the specific scheme of (4)(a) and (4)(b) controls over the general language of subsection (5) when it comes to DUIs, and subsection (5) controls for other instances not covered in subsection (4).

¶52    In *Brookins*, this Court considered two different rules of the Montana Rules of Civil Procedure, which addressed the extension of time. *Brookins*, ¶ 28. M. R. Civ. P. 6 was the more general rule that governed the computation and extension of time, and M. R. Civ. P. 16 specifically addressed scheduling orders that included discovery deadlines. *Brookins*, ¶ 28. This Court applied the general-specific canon and concluded that the more specific Rule 16 provided the appropriate standard. *Brookins*, ¶ 28. The Court should consistently apply its interpretation canons and rule the specific controls over the general in this situation as well.

### Stick to Our Business

¶53    Senator Shockley attempted in 2011 to include first-time DUI offenders in the search warrant scheme, but he was forced to pass a compromise bill. Senator Regier attempted to remove the first-time refusal protection in 2019, but again, the Legislature voted it down. This Court has now enacted the amendment the Legislature twice rejected.

¶54    The Majority has misinterpreted the law and should not justify it on the grounds that "Montana has a strong interest in decreasing DUI-related traffic accidents and deterring people from driving under the influence." Opinion ¶ 14  That is the Legislature's job to address. Our job is to correctly interpret the statutes.

¶55    I dissent. I would reverse and suppress the blood evidence, and remand for a new trial with the remaining evidence. We should limit *Minett* to cases that occurred prior to

33

the 2011 amendment, and we should re-affirm *Giacomini's* interpretation of the 2011 statutes as correct and not dicta. Finally, we should hold the search warrant exception in § 61-8-1016(5), MCA, applies to crimes not listed in § 61-8-1016(2)(a)(iii), MCA, as the Legislature intended.

/S/ CORY J. SWANSON