[Crim. No. 5847. Fourth Dist., Div. Two. Dec. 13, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT IRWIN CONNOLLY, Defendant and Appellant.

COUNSEL

William M. Jarvis, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Alan S. Meth and Joseph M. Cavanagh, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**THE COURT.**—Convicted by a jury of receiving stolen property (Pen. Code, § 496), defendant moved for a new trial on the ground he had been

denied due process because the court had proceeded with the trial in his absence. His motion was denied and he was sentenced to state prison for the term prescribed by law.

## FACTS

On April 12, 1972, a 1965 Chevrolet Corvair automobile (license No. NRW-120) belonging to Mr. Harvey Donnells was stolen near his place of employment in Riverside. Several months later on June 23, 1972, Mr. Donnells happened to see a Corvair on defendant's lawn which looked like the stolen vehicle.

Mr. Donnells and a Riverside police detective went to defendant's residence the following day. Despite the fact the vehicle bore a different license plate number (TPF-509), Mr. Donnells was able to identify it as his vehicle because of the numerous and unique modifications he had made on the vehicle prior to its theft.

Defendant produced a receipt for purchase of a vehicle from a Texaco station dated March 31, 1971, and claimed he had purchased the vehicle at that time. A registration slip for a 1966 Corvair (License No. TPF-509) was found in the glove box.

Subsequently defendant admitted he had owned a 1966 Corvair which he had junked. When asked how the license of the 1966 Corvair got on the 1965 Corvair, defendant remained silent. Defendant was then given the *Miranda* warnings and arrested.

The vehicle registration numbers on the engine and trim plate corresponded to those belonging to a 1966 Corvair, License No. TPF-509, registered to defendant. The regional auto theft officer of the California Highway Patrol examined the vehicle registration number plates and determined they were not affixed in the manner utilized by the manufacturer.

Thereafter a secret number on the vehicle was checked. A secret number is placed on vehicles in such a position that it usually cannot be found without special equipment. The secret number corresponded with that of Mr. Donnells' stolen 1965 Corvair, License No. NRW-120.

Neighbors of defendant testified that defendant had the vehicle in question in early March 1972, prior to the date of the theft.

## DISCUSSION

The sole issue on appeal is whether defendant was denied due process when the trial proceeded in his absence. Defendant appeared for

the first day of trial. At the close of the first day's proceedings, the trial court specifically ordered defendant to return at 9 a.m. the following morning, September 26, 1972. Defendant stated he would return. He was then on bail.

Defendant did not appear at 9 a.m. the next morning. Commencement of the trial was delayed until 1:30 p.m. whereupon the trial commenced in defendant's absence and the verdict was returned that afternoon.

Prior to commencing trial in defendant's absence, the court held a special hearing, outside the presence of the jury, to determine whether defendant was voluntarily absent. Defendant's wife testified that she had last seen defendant at approximately 6:40 a.m. when he left for work. Defendant was a foreman for a contractor and intended to lay out work for his men prior to his arrival at court. Defendant had stated he would meet his wife at court at 8:55 a.m. She testified that when he failed to appear she searched for him but had been unable to locate him.

Defendant's neighbor, Mr. Burke, testified that he also searched for defendant. Burke went to the Redlands jobsite where defendant was supposed to have gone, but he was not there. Burke then went to a Perris jobsite but again defendant was not there. A telephone call was placed to a Loma Linda jobsite but defendant had not been there.

The prosecutor stated that his office had not received a telephone call from defendant. The deputy public defender stated that he had checked with his office and had been advised that no telephone call had been received from defendant.

Pursuant to Penal Code section 1043, subdivision (b)(2), the trial court found that defendant was voluntarily absent from trial and ordered that the trial proceed in defendant's absence. Penal Code section 1043, subdivision (b)(2), provides, in pertinent part: "(b) The absence of the defendant in a felony case after the trial has commenced in his presence shall not prevent continuing the trial to, and including, the return of the verdict in any of the following cases: . . . (2) Any prosecution for an offense which is not punishable by death in which the defendant is voluntarily absent."

Penal Code section 1043, subdivision (b)(2), was enacted in 1970 and prior thereto when a defendant was absent from the trial, the statute required the court to declare a mistrial. Defendant has cited *People* v. *Anderson,* 6 Cal.App.3d 364 [85 Cal.Rptr. 669], and *People* v. *White,* 18 Cal. App.3d 44 [95 Cal.Rptr. 576], which are in direct conflict, but neither is helpful in the instant case as they involve interpretation of Penal Code section 1043 as it read prior to the 1970 amendment. ▮ We have been

unable to find any California case discussing the provisions of Penal Code section 1043, subdivision (b)(2).

Nevertheless, section 1043, subdivision (b)(2), was an adoption of the majority rule in the United States. (*Diaz* v. *United States,* 223 U.S. 442, 455-456 [56 L.Ed. 500, 505-506, 32 S.Ct. 250]; Witkin, Cal. Criminal Procedure (1963) Trial, § 388, p. 385.) Strikingly similar to section 1043, subdivision (b)(2), is rule 43, Federal Rules of Criminal Procedure, which provides, in pertinent part: "In prosecutions for offenses not punishable by death, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict." The essential elements of section 1043, subdivision (b)(2), and rule 43 are the same. We, therefore, look to several federal cases for guidance.

Defendant contends that the trial court had insufficient facts before it, when it proceeded in defendant's absence, to establish that the absence was voluntary. The contention infers that once defendant is found to be absent, the appropriate standard to be utilized in determining the voluntariness of the absence must then be met.

In the first *Cureton* case (*Cureton* v. *United States* (D.C.Cir. 1968) 396 F.2d 671 [130 App.D.C. 22]), the court concluded "that if a defendant at liberty remains away during his trial the court may proceed provided it is clearly established that his absence is voluntary. He must be aware of the processes taking place, of his right and of his obligation to be present, and he must have no sound reason for remaining away." (396 F.2d at p. 676.)

In the second *Cureton* case (*United States* v. *Cureton* (D.D.C. 1968) 302 F.Supp. 1065), upon remand, the trial judge concluded "that the defendant knowingly and voluntarily absented himself. . . ." (302 F.Supp. at p. 1069.) In the third *Cureton* case (*Cureton* v. *United States* (D.C.Cir. 1969) 413 F.2d 418 [134 App.D.C. 144]), the determination of the trial court was upheld.

■ Defendant's constitutional right to be present at trial is involved and consequently, the rule formulated in the *Cureton* cases should be the appropriate test—i.e., that defendant's absence was knowing and voluntary. However, defendant would have us apply this test in a manner that would make the practical application of section 1043, subdivision (b)(2), difficult if not impossible.

■ Unquestionably section 1043, subdivision (b)(2), was designed to prevent the defendant from intentionally frustrating the orderly processes of his trial by voluntarily absenting himself. A crucial question must always

be, "Why is the defendant absent?" This question can rarely be answered at the time the court must determine whether the trial should proceed. Consequently, in reviewing a challenge to the continuation of a trial pursuant to Penal Code section 1043, subdivision (b)(2), it must be recognized that the court's initial determination is not conclusive in that, upon the subsequent appearance of the defendant, additional information may be presented which either affirms the initial decision of the court or demands that defendant be given a new trial. It is the totality of the record that must be reviewed in determining whether the absence was voluntary.

When looking to the initial proceedings involving the determination to proceed with trial, sufficient facts must be before the court to establish what reasonably appears to be a prima facie showing of voluntary absence. In the usual case a continuation of at least a few hours in order to locate defendant is appropriate. Once the defendant is again before the court he may challenge the propriety of proceeding in his absence. In this regard he can testify and present other evidence on the issue of whether his absence was in fact voluntary. On appeal the reviewing court must determine, on the whole record, whether defendant's absence was knowing and voluntary. (See *United States* v. *Partlow* (2d Cir. 1970) 428 F.2d 814: *Cureton* v. *United States* (D.C.Cir. 1968) *supra,* 396 F.2d 671; *Phillips* v. *United States* (9th Cir. 1964) 334 F.2d 589, 591-592; *United States* v. *Cureton* (D.D.C. 1968) *supra,* 302 F.Supp. 1065.)

To look solely at the facts initially before the court would be patently unfair. If the facts initially before the court demonstrated a voluntary absence when in fact defendant was involuntarily absent, by defendant's reasoning, even when the truth was known, if the trial court refused to grant defendant relief, the reviewing court would be compelled to uphold the ruling. Such a result would be an abuse of the judicial process. The determination of the reviewing court *must* be based upon the totality of the facts; not just a portion of them.

In the instant case when the court ruled the trial was to proceed, it had before it the following facts: (1) Defendant had been specifically ordered by the court to return at 9 a.m. the morning of September 26, 1972; (2) defendant had acknowledged the court's order and stated he would then return; (3) neither defendant's wife nor neighbor had been able to locate defendant despite a search for him in those places they reasonably expected him to be; (4) defendant had not called his attorney, the court or prosecutor; (5) defendant was aware his trial was in progress; (6) he had appeared at prior court proceedings; (7) his admission of a prior conviction demonstrated his prior knowledge of the judicial process

and the necessity for appearances; and (8) the alleged prior conviction for escape added some credence to the fact his absence was voluntary. The facts before the court amply supported its decision to proceed with the trial.

Defendant moved for a new trial and gave testimony to support his assertion that he had not been voluntarily absent from trial. He testified he went to Redlands to map out work for his men and then left for court at approximately 8:30 a.m. Near the intersection of U.S. 395 and Interstate 10, his truck broke down. He spent 10 minutes trying to start it and then left it along the freeway and walked to a public pay telephone at a gas station. It took 30 to 45 minutes to reach the telephone.

Defendant then called the home of his neighbor (Burke). No one answered the telephone and defendant's change was returned to him. Defendant thereupon decided he should return to the truck because it had $5,000 worth of his employer's equipment in it.

Defendant returned to the truck, tore down the carburetor and repaired a hole in the float. Defendant finished between 3 and 3:45 p.m. and then drove to his employer's place of business in Riverside.

Defendant waited for his employer to arrive which occurred around 5 p.m. Defendant and his employer "discussed the job" and then shortly before 6 p.m. his employer and another man dropped defendant off about a block from the courthouse. As defendant was about to cross the street, he was arrested by Riverside officers who had been looking for him pursuant to a bench warrant for failure to appear. Defendant said he was on his way to see if the court or public defender's office was still open.

Defendant testified that he did not make any other telephone calls because he was worried about leaving his employer's equipment in the truck and that he did not call the public defender because he didn't have the money and didn't know the number. He then stated it didn't occur to him to call the public defender's office and reiterated he didn't have the money. Defendant thereafter admitted he could have called the public defender's office with the change the pay telephone returned to him.

He also testified that the California Highway Patrol did not check with him while stalled on the freeway because he was stopped in a construction area where there were a lot of trucks and cars parked and a lot of people were in the area. He talked to one construction worker who asked him what his problem was.

Defendant acknowledged that the court had told him to return at 9 a.m. and that he had indicated he would do so.

Defendant also acknowledged he had previously been in court numerous times and knew the importance of appearing in court. He also acknowledged that he had escaped from a "camp" on one occasion.

The above facts demonstrate with crystal clarity that defendant was voluntarily absent from the trial. While the breakdown of a vehicle while driving to court may provide an excuse for tardiness, it is not a blanket protection for a failure to appear. Defendant was under a duty to do all he reasonably could do to get to the court as promptly as possible. Defendant's testimony presents an example of flagrant disregard of the duty to appear in court.

Once defendant got to the public telephone with sufficient money to use it, his actions can only be described as cavalier. He didn't think of calling his attorney which, under the circumstances, borders on the inherently incredible.

Then defendant decided his best course of action was to protect his employer's equipment and tinker with the truck. There were construction workers where he was but he asked no one for help.

He fixed the truck after roughly four hours but still didn't call court or counsel nor did he drive to the court. Instead, he waited around his place of employment for an hour or so. After that he discussed a "job" with his employer, and only then, nearly 6 p.m., did he decide to make contact with the court or his counsel.

This is a case in which the defendant made *no* reasonable effort to contact the court or counsel, let alone get to the court albeit late. It takes little ingenuity to think of reasonable steps he could have taken and he took none.

It is manifest that the evidence supports the conclusion of the court that defendant knowingly and voluntarily was absent from court.

Judgment affirmed.