No. 80-336

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.

JOHN KLEMANN,

Defendant and Appellant.

---

Appeal from:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone.
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

Moses Law Firm, Billings, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Harold F. Hanser, County Attorney, Billings, Montana

---

Submitted on briefs: June 24, 1981

Decided: OCT 7 1981

Filed: OCT 7 198

Thomas J. Kearney
_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant, John Klemann, was found guilty of aggravated assault by a jury in the Yellowstone County District Court and sentenced to serve 12 years in prison. Defendant claims first that the trial court erroneously denied his motion for a one week continuance of the trial date, and second, that an aggravated assault conviction is not justified. We affirm the District Court.

We will first discuss defendant's motion for a one week continuance. The offense took place on March 15, 1980. The information was filed on March 20, followed by defendant's not guilty plea on March 25, 1980. The case was set for jury trial on April 28, 1980, and was subsequently reset to June 9, 1980, and then to June 16, 1980, then to June 19, 1980, the date on which trial commenced.

On the morning of the trial, after the jury had been called, the defendant's court-appointed counsel moved the court for a continuance of the case based on the fact that defendant had evidenced in the last couple of days that he was not certain that his appointed counsel would be able to help him in the course of the trial, that the defendant had evidenced that his mother had indicated she was going "to try to obtain private counsel" for him, and for the reason that defendant wanted further time in which to consider an offer by the State under which if defendant plead guilty the State would recommend a sentence of 5 years with all but one year suspended. Defendant's counsel requested a continuance of one week. The prosecution reviewed for the court the various activities which had occurred since the commission of the alleged offense. No additional facts were presented. The court denied the motion, and then heard the comments of

the defendant. The defendant stated that he wanted a different lawyer because his attorney had been up to see him only five or six times while he had been in jail, and that he had not talked with him for more than a total of two hours. He also complained that his attorney had told him that if he did go to trial, he would be convicted because he (the attorney) couldn't do anything about it. The court responded by pointing out that it was the task of his counsel to give an honest appraisal of the evidence and probable results. Defendant further said, "My mother has told me that she'll get another lawyer for me." The court replied that the case has been pending for three months and that the jury was in the courtroom waiting for him to be tried. The defendant then asked, "[w]hat if I waive right to fast and speedy trial?" The court again answered that when everyone is ready for trial, the defendant couldn't come in and say he doesn't want to go to trial. We note that preparation of the case for trial by the State had included bringing the victim from California to testify.

The case proceeded to trial and was completed on the following day. We have reviewed the transcript and it discloses adequate representation by the defendant's appointed counsel during the pretrial, trial and post-trial phases of the case. The transcript does not show a reasonable factual basis to suggest that any right of the defendant was denied by the denial of the motion for continuance.

The controlling statute is section 46-13-202, MCA, which states:

> "(1) The defendant or the state may move for
> a continuance. If the motion is made more than
> 30 days after arraignment or at any time after
> trial has begun, the court may require that it
> be supported by affidavit.

"(2) The court may upon the motion of either party or upon the court's own motion order a continuance if the interests of justice so require.

"(3) All motions for continuance are addressed to the discretion of the trial court and shall be considered in the light of the diligence shown on the part of the movant. This section shall be construed to the end that criminal cases are tried with due diligence consonant with the rights of the defendant and the state to a speedy trial."

Subsection (3) states that motions for continuance are addressed to the discretion of the trial court and shall be considered in light of the diligence shown on the part of the movant. Before a motion for a continuance is granted, the movant must show that he has employed due diligence to procure that which he now requests additional time to procure. State v. Kuilman (1941), 111 Mont. 459, 110 P.2d 969. The facts support the denial of the motion by the court in order that the case be tried in a manner consonant with the rights of both the defendant and the State to a speedy trial. Waiting until the day of trial to make such a motion does not show diligence on the part of the defendant. The case had previously been set for trial on two occasions, which should have brought into focus the concerns of the defendant. Defendant utterly failed to show an attempt or a capacity to obtain private counsel. There is a total absence of a showing that defendant would have been in an improved position had a continuance of one week been granted. A substitution of attorney for purposes of appeal was not in fact made for the defendant until December 17, 1980, six months after the trial. This does not indicate any capacity to cure the problem within the one week following June 19.

The rule regarding continuance in criminal matters is well stated in State v. Kirkland (1979), ___Mont.___, ___, 602 P.2d 586, 590, 36 St.Rep. 1963, 1967, where the court stated:

-4-

> "'Motions for continuance are addressed to the dis-
> cretion of the trial court and the granting of a
> continuance has never been a matter of right.
> (Citation omitted.) The district court cannot be
> overturned on appeal in absence of a showing of
> prejudice to the movant. (Citation omitted.)
>
> "'Defendant's argument therefore must stand or fall
> on the issue of prejudice, for the district court
> can be said to have abused its discretion only if its
> ruling was prejudicial.  We have not found a single
> case . . . in which the denial of a motion for
> a continuance was reversed without a showing of
> resulting prejudice to the movant.'  State v.
> Paulson (1975), 167 Mont. 310, 538 P.2d 339."

The statements of defendant's counsel and the defendant's

statements themselves do not show any prejudice.  The record

does not disclose any prejudice.  There appears no basis for

a reversal on this ground under the decisions of this Court.

Such decisions appear consistent with the holding of the

United States Supreme Court in Ungar v. Sarafite (1964), 376

U.S. 575, 589, 11 L.Ed.2d 921, 931, 84 S.Ct. 841, 850, in

which the Court said:

> "There are no mechanical tests for deciding when
> a denial of a continuance is so arbitrary as to vio-
> late due process.  The answer must be found in the
> circumstances present in every case, particularly
> in the reasons presented to the trial judge at the
> time the request is denied."

The circumstances and the reasons presented to the trial

court totally fail to justify a conclusion that the denial of a

motion for continuance was arbitrary.  We affirm the trial

court's denial of the motion.

We next consider if an aggravated assault conviction

was justified.  The record contains extensive evidence with

regard to events prior to the actual assault which we do not

deem it necessary to set out in detail.  The victim was a 19-

year-old female, 5'6" tall and weighing 105 pounds.  The

victim had met the defendant only a few minutes before the

time of the assault.  They were sitting in a living room on

a couch.  The defendant was sitting a few feet from the

victim. They talked for approximately four minutes, after which the defendant made an advance toward the victim and started to grab and pull her towards him. The victim said: "Excuse me, I'm not into that and I don't need anything like that." The defendant then sat back and resumed talking. After a short additional time, defendant again came toward the victim and tried to pull her to him and kiss her. The victim testified that she stood up and said: "Excuse me, I think you'd better leave." The defendant then reached up, grabbed the victim and threw her onto a couch. While she was lying on the couch, he hit her on the head with a glass ashtray. He hit her on the side of the head about five times. She began screaming while the defendant tried to roll her over. Another person then banged on the apartment door, seeking admittance, and the assault terminated. The evidence showed that the ashtray with which the defendant struck the victim weighed approximately 1 1/2 pounds, was square in shape and had sharp edges. Besides various bruises, the victim sustained a cut approximately 1 1/2 inches long which required two stitches to close.

The defendant was charged under section 45-5-202(1)(b), MCA, which states:

> "A person commits the offense of aggravated as-
> sault if he purposely or knowingly causes: . . .
>
> "(b) bodily injury to another with a weapon . . ."

Pursuant to the Montana statutory provisions, the jury was instructed as follows regarding weapon, bodily injury and serious bodily injury:

> "Instruction No. 13
>
> "'Bodily injury' means physical pain, or any
> impairment of physical condition.
>
> "Instruction No. 14
>
> "You are instructed that the term 'weapon' as
> used in these instructions means any instrument,

-6-

article, or substance which, regardless of its primary function, is readily capable of being used to produce death or serious bodily injury.

"Instruction No. 15

"'Serious bodily injury' means bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement or protracted loss or impairment of the function or process of any bodily member or organ."

The evidence shows a cut and bruises to the victim which are sufficient to constitute bodily injury. It is also readily apparent that a glass ashtray of the size and shape which was here involved constitutes a weapon capable of being used to produce serious bodily injury. Quite clearly, striking a person with an ashtray of this size and shape could result in serious permanent disfigurement, or impairment of the function of a bodily member or organ. The section under which the defendant was charged does not require proof in fact of serious bodily injury as defined in the statute. It is only necessary that the evidence show that the weapon was used in such a manner at that time and place and on that victim so that serious bodily injury was capable of being inflicted. The evidence is clearly sufficient to sustain the jury's finding of aggravated assault on the part of the defendant.

The District Court is affirmed.

_____
                        Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

-7-

Daniel J. Shea
Justice