FILED

12/16/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0360

DA 24-0360

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 288

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

JOSHUA MCKNIGHT,

     Defendant and Appellant.

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and For the County of Sanders, Cause No. DC-21-21
Honorable Molly Owen, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Tammy A. Hinderman, Appellate Defender Division Administrator,
Jeavon Lang, Managing Appellate Attorney, Helena, Montana

     For Appellee:

          Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
Attorney General, Helena, Montana

          Jania Hatfield, Sanders County Attorney, Naomi Leisz, Deputy
County Attorney, Thompson Falls, Montana

             Submitted on Briefs:  October 15, 2025

                  Decided:  December 16, 2025

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1	On September 12, 2022, Joshua Alan McKnight (McKnight) was convicted of Criminal Possession of Dangerous Drugs, a felony, in violation of § 45-9-102, MCA, following a jury trial in the Twentieth Judicial District Court, Sanders County. McKnight appeared for trial but did not return from the lunch break. McKnight now appeals to this Court, claiming that the District Court erroneously resumed trial and permitted the jury to return the verdict in his absence. McKnight also claims his trial counsel was ineffective by failing to move to suppress evidence. We affirm.

¶2	We restate the issues on appeal as follows:

> *Issue One: Whether the District Court erred by continuing with trial in McKnight's absence.*
>
> *Issue Two: Whether McKnight's ineffective assistance of counsel claim is properly before us on direct appeal.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3	On May 8, 2021, at approximately 6:00 p.m., Montana Highway Patrol Trooper Jourdon Gulick (Trooper Gulick) was advised of a single vehicle crash on Highway 200 in Trout Creek, Montana. It was reported that a male was trapped in the vehicle, a baby was seriously injured, and another male had left the scene. The reporting party stated that the driver appeared to be the male who left the scene. McKnight was identified as a passenger. McKnight was transported to the Clark Fork Valley Hospital in nearby Plains, Montana. Officer Jared Hutchings (Officer Hutchings), of the Plains Police Department, met the ambulance at Clark Fork Valley Hospital to identify the passenger from the crash.

2

¶4     At the hospital, Officer Hutchings confirmed McKnight's identity. Hospital staff cut McKnight's clothes off in preparation for x-rays. The on-duty nurse requested help from Officer Hutchings because live ammunition fell out of McKnight's pocket. A pipe and baggie containing suspected methamphetamine were found in McKnight's clothing. The substance weighed five grams and tested positive for methamphetamine.

¶5     The subsequent investigation of the crash scene revealed drugs and paraphernalia in plain view. Law enforcement seized approximately ten grams of suspected heroin, various firearms, a scale, baggies, a loaded syringe with suspected heroin, magazines, and ammunition. On June 30, 2021, McKnight was charged with Criminal Possession of Dangerous Drugs,[1] a felony, in violation of § 45-9-102, MCA.

¶6     The parties appeared for jury trial on September 12, 2022. McKnight moved to substitute his attorney prior to voir dire. The District Court denied the motion after conducting a hearing with McKnight and his attorney. After voir dire, the State made its opening statement and called its first witness. McKnight's attorney cross-examined the State's first witness prior to lunch. The parties recessed for lunch at 11:46 a.m. and were to be back at 12:50 p.m.

¶7     The court reconvened on the record at 1:06 p.m. McKnight was not present. The parties discussed whether trial could continue in McKnight's absence. The court cited

---

[1] McKnight was also charged with Criminal Possession of Dangerous Drugs with the Intent to Distribute, a felony, in violation of § 45-9-103, MCA; Criminal Endangerment, a felony, in violation of § 45-5-207, MCA; Unlawful Possession of a Firearm by a Convicted Person, a felony, in violation of § 45-8-313, MCA; and four counts of Unlawful Use/Possession of Property Subject to Criminal Forfeiture, a felony, in violation of § 45-9-206(1), MCA. These charges were dismissed without prejudice prior to trial.

3

§ 46-16-122(3)(b), MCA, which addresses the absence of a defendant after trial has commenced in their presence. On McKnight's behalf, his attorney objected to resuming trial. The District Court, relying on § 46-16-122(3)(b), MCA, overruled the objection and proceeded with trial. The District Court reasoned that the absence of the defendant does not prevent the trial from continuing if the defendant is voluntarily absent and the offense is not one that is punishable by death.

¶8      Trial resumed and the jury returned with a verdict at 3:24 p.m. The District Court noted on the record that neither McKnight nor his trial counsel were present and proceeded to the verdict.[2] The jury found McKnight guilty. Prior to adjourning, the State requested a warrant for McKnight because the State "believe[d] the defendant . . . absconded." The District Court issued the warrant. McKnight was arrested on the warrant on September 15, 2022, and was released on his own recognizance. McKnight failed to appear for the sentencing hearing set for December 13, 2022. The State requested another warrant that was issued by the District Court. On June 25, 2023, McKnight was arrested and thereafter appeared on the arrest warrant on June 28, 2023. At the time of his appearance, McKnight's trial counsel notified the District Court of a conflict and requested new counsel be appointed. The District Court ordered new counsel to be appointed as soon as possible. Sentencing was held on April 9, 2024, after multiple continuances. McKnight was sentenced to five years to the Montana State Prison, with no time suspended.

---

[2] McKnight's trial counsel had informed the District Court that "as long as it was okay with the State, he was going to leave because he would not need to do anything further, because he had to travel back to Polson."

4

¶9   On appeal McKnight argues that the District Court erred by resuming trial in his absence. McKnight contends that the parties failed to exercise due diligence to secure his presence prior to the verdict. McKnight also argues that his counsel was ineffective when he failed to challenge the warrantless search of his clothing. McKnight contends that a successful suppression motion would have prevented the State from meeting its burden of proof at trial. He seeks a reversal of his conviction and a remand for a new trial.

## STANDARDS OF REVIEW

¶10   "We exercise plenary review over constitutional questions, including alleged violations of a criminal defendant's right to be present at critical stages of the proceedings against him." *State v. Wilson*, 2013 MT 70, ¶ 9, 369 Mont. 282, 297 P.3d 1208 (citing *State v. Charlie*, 2010 MT 195, ¶ 21, 357 Mont. 355, 239 P.3d 93).

¶11   "We review a district court's statutory interpretation and construction de novo for correctness." *State v. Clinkenbeard*, 2025 MT 54, ¶ 5, 421 Mont. 137, 565 P.3d 1259 (citations omitted). Where the plain meaning of words used in a statute can be determined, we will not go further and apply other interpretations. *State v. Gatts*, 279 Mont. 42, 47, 928 P.2d 114, 117 (1996) (citation omitted).

¶12   This Court reviews claims of ineffective assistance of counsel de novo, as they "are mixed questions of law and fact." *State v. Morgan*, 2003 MT 193, ¶ 7, 316 Mont. 509, 74 P.3d 1047 (citations omitted).

## DISCUSSION

¶13   *Issue One: Whether the District Court erred by continuing with trial in McKnight's absence.*

5

¶14 The United States Constitution and the Montana Constitution provide a defendant with the right to be present at all "critical stages" of a criminal proceeding against them. *State v. Blake*, 2016 MT 212, ¶ 7, 384 Mont. 407, 377 P.3d 1213 (citing *Wilson*, ¶ 11; U.S. Const. amend. VI; U.S. Const. amend. XIV; Mont. Const. art. II, § 24). "A critical stage includes 'any step of the proceeding where there is potential for substantial prejudice to the defendant.'" *Blake*, ¶ 7 (quoting *Charlie*, ¶ 40). The Court considers three factors to determine whether a violation of the defendant's right to be present occurred: "(1) whether the defendant was excluded from a critical stage of the proceedings; (2) whether the defendant waived his right to be present at the critical stage; and (3) whether the defendant was prejudiced by his absence." *Blake*, ¶ 8 (citing *State v. Price*, 2009 MT 129, ¶¶ 23-24, 350 Mont. 272, 207 P.3d 298). A waiver of rights will not be presumed; a waiver "of one's constitutional rights must be made specifically, voluntarily, and knowingly." *State v. McCarthy*, 2004 MT 312, ¶ 32, 324 Mont. 1, 101 P.3d 288 (citing *State v. Bird*, 2001 MT 2, ¶ 35, 308 Mont. 75, 43 P.3d 266).

¶15 Two statutes, consistent with the aforementioned law, control this issue. Section 46-16-122(3)(b), MCA, "absence of defendant from trial[,]" provides:

> After the trial of a felony offense has commenced in the defendant's presence, the absence of the defendant during the trial may not prevent the trial from continuing up to and including the return of a verdict if the defendant [. . .] is voluntarily absent and the offense is not one that is punishable by death.

§ 46-16-122(3)(b), MCA. The second relevant statute is § 46-16-123(2)(a), MCA, "[a]bsence of defendant on receiving verdict or sentencing[,]" which provides:

6

> In all felony cases, the defendant shall appear in person when the verdict is returned [. . .] unless, after the exercise of due diligence to procure the defendant's presence, the court finds that it is in the interest of justice that the verdict be returned in the defendant's absence.

§ 46-16-123(2)(a), MCA. Statutes *in pari materia* which cover the same subject matter "should be construed together and effect given to both if it is possible to do so." *Mountain W. Farm Bureau Mut. Ins. Co. v. Hall*, 2001 MT 314, ¶ 23, 308 Mont. 29, 38 P.3d 825.

¶16 McKnight argues that the District Court erred by resuming his trial because he was involuntarily absent due to health issues. McKnight contends that the District Court erroneously applied precedent for misdemeanor trials conducted in absentia. McKnight further argues that the original inquiry into his absence lacks the due diligence required by § 46-16-123(2)(a), MCA. Contrarily, the State argues that McKnight was voluntarily absent; therefore, the District Court was authorized to proceed in accordance with § 46-16-122(3)(b), MCA.

¶17 These statutes must be construed consistently together. We will first examine § 46-16-122(3)(b), MCA, which addresses the absence of a defendant from trial.

¶18 McKnight's original trial date of May 9, 2022, had already been continued on his motion due to medical issues. On June 27, 2022, the State moved to schedule the jury trial and submitted that "[n]o further information has been presented concerning [McKnight's] medical issues." On the morning of trial on September 12, 2022, McKnight stated, "I've had to put off emergency surgery. I have an abscess in my pelvic area. And I've put off my surgeries and stuff because I don't want to go to surgery sick and stressed out, you

7

know. And I need heart surgery again." Trial then commenced through the morning until breaking for lunch.

¶19    When the parties reconvened after the lunch break, McKnight was not present:

> THE COURT: All right. So, the defendant is not present[.] He was instructed to be back at 12:50. It is now 1:10. Defense Counsel, where is your client?
>
> McKNIGHT'S ATTORNEY: Judge, I don't know. But I don't think the Court can try a felony in absentia.
>
> THE COURT: All right. 46-16-122 states, after the trial of a felony offense has commenced in the defendant's presence, the absence of the defendant during the trial may not prevent the trial from continuing, up to and including the return of a verdict, if the defendant is voluntarily absent and the offense is not one that is punishable by death.
>
> McKNIGHT'S ATTORNEY: I stand corrected.
>
> THE COURT: And it says, [n]either 46—this is case law. Neither 46-16-122 nor case law requires fact finding related to the basis of one's absence prior to conducting a trial in absentia.
>
> .   .   .
>
> McKNIGHT'S ATTORNEY: Okay. Well, I should object on his behalf and the Court can rule on that.
>
> THE COURT: All right. We are going to continue on. It's been more than 21 minutes since the defendant was to return.

The State proceeded with its case in chief. When prompted to begin the defense's case in chief, after the State rested, McKnight's attorney stated, "I don't have a case without [McKnight]." He further responded, "Mr. McKnight did not come back from lunch [. . .] He didn't sound too good or look too good," but was unsure whether McKnight was sick. The defense then rested. The jury heard closing arguments, deliberated for approximately 20 minutes, and returned a verdict finding McKnight guilty in absentia.

8

¶20     Months later, McKnight was arrested and appeared on his arrest warrant on June 28, 2023.  McKnight argued why his bond amount should be lowered:

> MR. MCKNIGHT: Um, I just had major heart surgery.  I was not aware—I had a graft—essentially a graft put over the top of the first cut in my heart, and I haven't had time to go see the doctors and get my medications and stuff adjusted to where my blood pressure is normal level[.]  I've showed up to every court appearance besides the sentencing one.  And the reason being, I didn't—I—I didn't hear back from my attorney.
>
> THE COURT: Mr. McKnight, though, you—you also—you also left midway through your trial.
>
> MR. McKNIGHT: Well, I apologize for that.  I went to the ER.  I had severe—severe heart failure and was admitted to Sandpoint hospital, with 20 percent reduced traction in my left ventricle.  I was in the ER.  I went straight to the ER from the trial.  And if you remember, I couldn't breathe.  I was having a real hard time breathing and stuff during trial [. . .] I didn't really know what to do, so I just sat at home with my heart.
>
> .    .    .
>
> COUNTY ATTORNEY: [T]his defendant has had ample time to contact his attorney or contact the Court, letting us know what—if there was, indeed, a medical problem, which still to this day, I have not been informed of any medical issue.  And he also failed to appear at his sentencing.  And my—the sheriff's department—the deputies have seen him multiple times driving, not only in Sanders County but in Clark Fork, Idaho.  And he's been seen multiple times there, riding four wheelers and driving around in his vehicle.

Importantly, McKnight did not request a new trial.  His arguments were directed at having the amount of bail reduced.  The District Court reduced McKnight's bond "because of the defendant's admitted health issues, even though we have not actually seen any evidence of that."  McKnight responded, "[W]ho do I need to give those papers to, to make you aware of the medical situation?  Because I signed a release to the sheriff's department."  The

9

record does not reflect McKnight provided any records of his September 12, 2022 medical emergency.

¶21 Trial is undoubtedly a critical stage of criminal proceedings. The Court must next determine whether McKnight waived his right to be present. *Blake*, ¶ 8. A defendant waives the "right to be present at trial in two ways: (1) failing to appear, or (2) through an express personal waiver." *State v. Clark*, 2005 MT 169, ¶ 15, 327 Mont. 474, 115 P.3d 208 (citing *McCarthy*, ¶ 32; *State v. Tapson*, 2001 MT 292, ¶ 24, 307 Mont. 428, 41 P.3d 305). "An absence is voluntary if the defendant knew of the hearing and failed to appear due to circumstances within his control." *State v. Marquart*, 2020 MT 1, ¶ 22, 398 Mont. 233, 455 P.3d 460 (citations omitted).

¶22 There are limited cases in our jurisprudence that address trying a defendant in absentia for a felony charge. *See McCarthy*, ¶ 34 (in custody defendant waived right to be present at felony trial through written waiver); *State v. Aceto*, 2004 MT 247, ¶ 47, 323 Mont. 24, 100 P.3d 629 (in-custody defendant removed from felony trial due to behavior). McKnight recognized that, "[o]stensibly from the context, the District Court relied on" *Clark* to resume trial. Though we disagree that the District Court relied on anything but § 46-16-122(3)(b), MCA, we nonetheless address *Clark*, which had very similar facts but involved a misdemeanor charge. In *Clark*, we upheld a decision to proceed with a trial in absentia, in accordance with § 46-16-122, MCA. *Clark*, ¶ 17. This Court affirmed the finding that Clark was voluntarily absent because he admitted himself into the hospital on the day of trial. *Clark*, ¶¶ 16-17. Clark received warnings prior to trial that a medical

absence without verification from a physician would constitute a voluntary absence. *Clark*, ¶ 16. A nurse called the court's clerk and informed the court "that hospital staff had been unable to verify [Clark's] physical complaints, and that he would be released." *Clark*, ¶ 6. Clark was found guilty by the jury. *Clark*, ¶ 7. We concluded that Clark was voluntarily absent and the municipal court did not err in proceeding with trial. *Clark*, ¶ 17.

¶23    The parties cite *State v. Finnegan*, 784 N.W.2d 243 (Minn. 2010), where the defendant attempted suicide the morning of his second day of trial. *Finnegan*, 784 N.W.2d at 246-47. The trial court determined that the defendant had "voluntarily and unjustifiably absented himself from trial" and proceeded with trial. *Finnegan*, 784 N.W.2d at 246. On appeal to the Minnesota Supreme Court, the defendant argued that the trial court erred in resuming "trial without giving him sufficient time to prove that his absence was involuntary." *Finnegan*, 784 N.W.2d at 249. Though the Minnesota Supreme Court noted that the trial court "could have done a more thorough investigation," the court relied on the defendant's opportunity, after the fact, to prove that his absence was involuntary. *Finnegan*, 784 N.W.2d at 250. The court concluded that, "even if the district court's finding of voluntariness was unreasonably premature, Finnegan had the opportunity to demonstrate that his absence was involuntary both at [a] hearing [. . .] and at the postconviction stage. Finnegan did not avail himself of either of these opportunities." *Finnegan*, 784 N.W.2d at 250.

¶24    Other states follow this reasoning. In *State v. Harris*, 630 P.2d 332 (Or. 1981), the Oregon Supreme Court concluded that "there was ample information from which the trial

judge could conclude at the time that [the] defendant had voluntarily absented himself" because there was no information to support an involuntary absence. *Harris*, 630 P.2d at 336. The Washington Supreme Court has a three-prong approach requiring the court to:

> (1) [make] sufficient inquiry into the circumstances of a defendant's disappearance to justify a finding whether the absence was voluntary, (2) [make] a preliminary finding of voluntariness (when justified), and (3) [afford] the defendant an adequate opportunity to explain his absence when he is returned to custody and before sentence is imposed.

*State v. Thomson*, 872 P.2d 1097, 1100 (Wash. 1994) (insertions in original; citations omitted). Like McKnight, Thomson left after trial had begun. *Thomson*, 872 P.2d at 1101. Thomson told his attorney's secretary that he would not be in court because of a medical emergency. *Thomson*, 872 P.2d at 1099. The court found Thomson voluntarily absented himself after waiting over three hours and without any further indication from Thomson of where he was. *Thomson*, 872 P.2d at 1099. Thomson later called his attorney and learned of the guilty verdict. *Thomson*, 872 P.2d at 1099. Thomson appeared at sentencing and gave no explanation for his absence. *Thomson*, 872 P.2d at 1099. The Washington Supreme Court concluded that "[t]he court sufficiently inquired into the circumstances of the [d]efendant's absence to make a finding of voluntariness, and gave the [d]efendant adequate opportunity to explain his absence prior to sentencing." *Thomson*, 872 P.2d at 1101.

¶25 Fed. R. Crim. P. 43 is similar to § 46-16-122(3)(b), MCA. "[Rule 43] treats midtrial flight as a knowing and voluntary waiver of the right to be present." *Crosby v. U.S.*, 506 U.S. 255, 261, 113 S. Ct. 748, 752 (1993). A defendant who was initially present at trial

waives the right to be present when the defendant is voluntarily absent after trial has begun. Fed. R. Crim. P. 43(c)(1)(A). If the defendant waives the right to be present, the trial may proceed to completion, including the verdict's return and sentencing, during the defendant's absence. Fed. R. Crim. P. 43(c)(2).

¶26 California has a similar provision to Rule 43 and § 46-16-122(3)(b), MCA. The California Court of Appeal determined that, "upon the subsequent appearance of the defendant, additional information may be presented which either affirmed the initial decision of the court or demands that the defendant be given a new trial." *People v. Connolly*, 36 Cal. App. 3d 379, 385 (Cal. Ct. App. 1973). Connolly moved for a new trial and testified that he was involuntarily absent from his trial. *Connolly*, 36 Cal. App. 3d at 386. The Court of Appeal affirmed the denial of his motion for a new trial and held that his absence was voluntary. *Connolly*, 36 Cal. App. 3d at 387. The court looked to the "totality of the facts; not just a portion of them." *Connolly*, 36 Cal. App. 3d at 385.

¶27 Here, the record does not support McKnight's contention that the District Court was aware he was suffering from breathing issues during trial. Further, despite McKnight's submission of a robust amount of documentation for sentencing, he failed to provide any medical documentation from his asserted medical event on September 12, 2022. If McKnight indeed went straight to the hospital from trial, he did not explain why he elected to travel the longer distance to Sandpoint, Idaho, while experiencing emergency medical conditions, rather than seek more immediate treatment at Clark Fork Valley Hospital in nearby Plains, Montana.

¶28 McKnight argues that, "[u]nlike *Clark*, the District Court did not exercise diligence in attempting to return McKnight." What distinguishes *Clark* from the instant case is that the District Court did not have the benefit of knowing McKnight's location. The extent of the court's "diligence" in *Clark* was receiving a phone call from a nurse at the hospital. Here, the District Court did not receive any phone calls from the hospital notifying them that McKnight had been admitted, nor did the District Court receive any documentation confirming McKnight's whereabouts on the afternoon of September 12, 2022.

¶29 After multiple continuances, McKnight was sentenced on April 9, 2024. McKnight failed to provide a medical record, a doctor's phone call, or any verification that supported him needing to involuntarily leave midway through his trial for medical reasons. After sentencing McKnight, the District Court reasoned, "Mr. McKnight has used his health continually. It's been an ongoing theme to try to avoid any responsibility." Based on the foregoing, we conclude that the District Court did not err by resuming McKnight's trial in his absence. The District Court correctly applied § 46-16-122(3)(b), MCA, to find McKnight chose to voluntarily absent himself from trial. McKnight had ample time to provide evidence of his claimed medical event on September 12, 2022, but did not avail himself of the opportunity. Moreover, McKnight did not request a new trial until this appeal. Here, McKnight's voluntary absence resulted in a waiver of the right to be present at trial.

¶30 We next examine § 46-16-123(2)(a), MCA, which addresses the absence of a defendant on receiving the verdict. In his briefing, McKnight mentions that the original

14

inquiry into his absence lacks the due diligence required by § 46-16-123(2)(a), MCA, to obtain his presence for the return of the jury verdict. McKnight does not argue that he was prejudiced by his absence from the verdict; he argues the State must demonstrate that there is no reasonable possibility that his constitutional rights were violated. The State did not address the requirements of § 46-16-123(2)(a), MCA, in its briefing on appeal. The statutes must be construed consistently together and the inquiry required of § 46-16-123(2)(a), MCA, turns on what is required to establish due diligence.

¶31    This Court has previously held that a youth did not meet their burden of due diligence in discovering evidence prior to trial. *In re J.R.T.*, 258 Mont. 520, 523, 853 P.2d 710, 712 (1993). There, we concluded that "[d]ue diligence requires something more than merely relying on an unknown address and a former place of employment." *In re J.R.T.*, 258 Mont. at 523, 853 P.2d at 712. In *State v. Klemann*, 194 Mont. 117, 634 P.2d 632 (1981), this Court affirmed the trial court's denial of a motion to continue trial because the defendant "utterly failed to show an attempt or a capacity to obtain private counsel." *Klemann*, 194 Mont. at 120-21, 634 P.2d at 634-35. The defendant was required to show that they "employed due diligence to procure that which he now requests additional time to procure." *Klemann*, 194 Mont. at 120, 634 P.2d at 634. "[T]he showing of due diligence is in the nature of a conclusion." *State v. Kuilman*, 111 Mont. 459, 462, 110 P.2d 969, 970 (1941).

¶32    District Courts must construe § 46-16-122(3)(b), MCA, and § 46-16-123(2)(a), MCA, together. Here, the District Court did not exercise due diligence in accordance with

15

§ 46-16-123(2)(a), MCA. However, we do not find this determinative because McKnight's voluntary absence acted as a waiver of his right to be present at the verdict. A defendant's voluntary absence after a felony trial has commenced renders a court's due diligence inquiry to procure them for the verdict unnecessary. In the absence of such a waiver, courts must exercise due diligence to procure the defendant for the verdict in accordance with § 46-16-123(2)(a), MCA. However, McKnight's voluntary absence in the instant case acted as a statutory waiver of his right to be present, and, construing the statutes together, we hold that there was no need for the District Court to employ a due diligence inquiry after McKnight had voluntarily waived his presence. When the jury returned the verdict, the Court stated: "We are back on the record. The State's attorney is present. The defendant is not present," and the court proceeded with trial, including receiving the jury's verdict. The jury found McKnight guilty in absentia.

¶33 Here, McKnight failed to provide any proof that he involuntarily left trial for medical reasons and went to the hospital. McKnight's arguments concerning his health care when he appeared on his arrest warrant were directed at reducing bond, not at securing a new trial. We conclude that McKnight's absence from the verdict does not warrant a new trial. "To allow the . . . activities of a defendant . . . to prevent his trial is to allow him to profit from his own wrong." *Illinois v. Allen*, 397 U.S. 337, 350, 90 S. Ct. 1057, 1064 (1970) (Brennan, J., concurring).

¶34 *Issue Two: Whether McKnight's ineffective assistance of counsel claim is properly before us on direct appeal.*

¶35 The United States Constitution and the Montana Constitution provide citizens with the right to effective assistance of counsel. U.S. Const. amend. VI; Mont. Const. art. II, § 24; *State v. Johnson*, 2019 MT 34, ¶ 14, 394 Mont. 245, 435 P.3d 64. This Court applies the test from *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), which requires the defendant "show not only that his counsel's performance was deficient, but that the deficient performance was prejudicial to the defendant." *Morgan*, ¶ 9 (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064).

¶36 Prior to ruling on whether the defendant has satisfied the *Strickland* test, the Court must determine whether a direct appeal is the proper forum for the ineffective assistance of counsel claim. *State v. Kougl*, 2004 MT 243, ¶ 14, 323 Mont. 6, 97 P.3d 1095. "If the record on appeal explains 'why,' we will then address the issue on appeal. If, as is usually the case, the claim is based on matters outside the record on appeal, we will refuse to address the issue on appeal." *Kougl*, ¶ 14. If the Court refuses to address the issue, the defendant may file a postconviction proceeding where the record can be developed to address "why" counsel acted as the defendant alleged. *Kougl*, ¶ 14. "Only when the record will fully explain why counsel took, or failed to take, action in providing a defense for the accused may this Court review the matter on direct appeal." *State v. White*, 2001 MT 149, ¶ 20, 306 Mont. 58, 30 P.3d 340. It is a "relatively rare situation where there is 'no plausible justification' for what defense counsel did." *Kougl*, ¶ 15. Failure to prepare a defense, failure to inform the defendant of consequences of certain options, and failure to offer a specific jury instruction are examples of non-record-based claims. *White*, ¶¶ 18-19.

17

"Generally, an alleged failure to object to the introduction of evidence, or to object to testimony of a witness, or object to prosecutorial misconduct at trial has been deemed record-based, and therefore appropriate for direct appeal." *White*, ¶ 15.

¶37 McKnight argues that his attorney had no plausible justification to waive a suppression challenge to the search of his clothing. McKnight further argues that he was prejudiced and suppression of the evidence would have eliminated the only inculpatory evidence to convict McKnight of criminal possession of dangerous drugs. The State argues that a motion to suppress would have been without merit because it was a private search, not a government search. The State also argues that they could have augmented the record to support a safety concern which would warrant the nurse's request for assistance from an officer.

¶38 Here, we conclude the allegation is a non-record based claim. As we recognized in *State v. Gunderson*, 2010 MT 166, 357 Mont. 142, 237 P.3d 74, "[t]he record here provides no information on whether [defense counsel's] omissions were reasonable under the circumstances or due to deficient performance." *Gunderson*, ¶ 77. Though the State attempts to supplement the answer, the record does not answer "why" McKnight's attorney did not file a motion to suppress. Accordingly, we hold that McKnight's allegation of ineffective assistance of counsel is non-record based and cannot be reviewed on direct appeal.

## CONCLUSION

¶39 When a trial court correctly determines pursuant to § 46-16-122(3)(b), MCA, that a defendant has voluntarily absented themselves from trial, then a due diligence inquiry under § 46-16-123(2)(a), MCA, is not required. McKnight has not demonstrated a record based ineffective assistance of counsel claim. The judgment of the District Court is affirmed.

¶40 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M. BIDEGARAY
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON